UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:15-CR-102 JD |
| | ) | |
| LAWRENCE LUSK | ) | |

## OPINION AND ORDER

### I. Introduction and Background

On December 30, 2015, this Court found Defendant Lawrence Lusk guilty on his plea of guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Mr. Lusk is now before the Court for sentencing. At issue here, his counsel objects to the application of the four-level enhancement under United States Sentencing Guideline § 2K2.1(b)(6)(B), which applies where a defendant "used or possessed any firearm or ammunition in connection with another felony offense." Thus, the enhancement is warranted "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) App. Note 14. The Government has the burden of proving the enhancement by a preponderance of the evidence. *United States v. Sandidge*, 784 F.3d 1055 (7th Cir. 2015).

The Government argues that the enhancement is appropriate because the Defendant possessed a firearm in connection with a felony battery or drug distribution offense. The defense responds that no battery occurred and that even if a battery did occur, Mr. Lusk did not use a firearm in connection with it. Further, the defense says, any such battery would have been a misdemeanor, not a felony, because it was not committed in the physical presence of a child. As to drug distribution, the defense contends that Mr. Lusk was a mere user, rather than a distributor of controlled substances.

On Wednesday, May 4, 2016, the Court held a hearing on these issues and received

evidence and argument. It now turns to considering whether to apply the disputed enhancement in this case.

## II. Facts

The parties do not dispute the following facts. On September 2, 2015, police received a call from staff at a McDonald's restaurant after the children of Lawrence Lusk's girlfriend, Victoria Holloway, entered the restaurant crying and indicating that Mr. Lusk and Ms. Holloway were fighting in the parking lot. Officers responded to that call and arrested Mr. Lusk for domestic violence. They found Ms. Holloway to have visible injuries on her neck. On a search incident to arrest, police found Mr. Lusk to be in possession of, among other things, one bag containing 5.48 grams of cocaine, two bags containing a total of 3.59 grams of heroin, a bag containing 16.92 grams of marijuana, a digital scale and $231 in cash ($100 of which was counterfeit). A McDonald's customer further informed police that she had observed Mr. Lusk place a pistol under the passenger seat of Ms. Holloway's car. Police then searched Ms. Holloway's car and found a Glock 21 .45 caliber pistol that belonged to Mr. Lusk. It was loaded with a round in the chamber.

## III. Testimony

Three witnesses testified before the Court during the May 4, 2016 hearing.[1] First, Officer Caleb Jackson of the South Bend Police Department testified that he responded to the dispute between Mr. Lusk and Ms. Holloway. He indicated that he arrived at the McDonald's, heard a loud verbal argument and determined that Mr. Lusk and Ms. Holloway had been in an altercation. Ms. Holloway told him that she had been in an argument with Mr. Lusk, and that she

---

[1] Reverend Byron Johnson also spoke as a character witness on behalf of Mr. Lusk. That testimony is not relevant to the Guidelines issue in dispute here, though the Court will consider it later in its evaluation of 18 U.S.C. § 3553(a) factors.

told her children to go into the McDonald's. She was following her children into the McDonald's, when Mr. Lusk grabbed her by the neck. Officer Jackson stated that Ms. Holloway did not tell him exactly where her children were when this occurred. Officer Jackson further explained that he took Mr. Lusk into custody and conducted a search incident to arrest in which he found on Mr. Lusk's person the variety of drugs, $231 in cash and digital scale noted above.

Second, Drug Enforcement Agency Agent John DuPont testified. He indicated that he has considerable experience in drug trafficking investigations, covering over eight years of primarily undercover work spanning between 300-500 investigations. He opined that the 5.48 gram quantity of cocaine in Mr. Lusk's possession could be consistent with personal use. As for heroin, Agent DuPont testified that a typical injection heroin user uses approximately 0.1 gram of heroin at a time, three to four times per day, though noted that some users could use as much as a gram per day. He was unsure how much heroin a typical intranasal heroin user consumes per day, but acknowledged it would likely be more than that used by an injection heroin user. He opined that 3.59 grams of heroin is a distribution weight with a street value of between $350-750 that would not typically be carried by a drug user, since heroin addicts tend to quickly consume all of the drugs in their possession. He stated that digital scales, baggies and guns are tools of the drug trade and that it is uncommon for those that use, but do not distribute drugs to carry digital scales. He also stated that it is unusual for a drug addict to carry a firearm, as an addict would typically sell a weapon to support his habit. Agent DuPont concluded that he believed Mr. Lusk was selling drugs due to the quantity and variety of drugs he was carrying, the firearm and digital scale in his possession and because no needles were found on Mr. Lusk (which one would expect to recover from an addict).

Third, Mr. Lusk's girlfriend, Victoria Holloway, testified. She stated that Mr. Lusk did not grab her by the throat and that she did not know how she obtained the injury on her neck. She said that it could be work-related, as she works in a facility that cares for dementia patients. She further stated that Mr. Lusk was a drug addict in serious need of help, though she did not know what quantity of drugs Mr. Lusk used per day.

### IV. Applicability of the Enhancement

After considering this testimony, the Court cannot find by a preponderance of the evidence that § 2K2.1(b)(6)(B) is justified here. With regard to the battery offense, there is substantial evidence that Mr. Lusk battered Ms. Holloway. This includes the police reports submitted by the Government, the pictures taken by the police at the scene (which show a fresh wound to Ms. Holloway's neck) and the testimony of Officer Jackson. While Ms. Holloway testified that Mr. Lusk did not grab her neck, that testimony is inconsistent not only with the above evidence, but also with her prior statement to Officer Jackson.

That said, battery is not a felony in Indiana unless it occurs under one or more conditions enumerated by statute. The Government contends that Mr. Lusk "committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-2-1(d)(6). If true, that would make the battery a felony. The Government has not, however, presented evidence to that effect. A police report indicates, and Officer Jackson confirmed, that Ms. Holloway "felt her children were in danger so she told them to go inside and was following them inside when Mr. Lusk grabbed her by the throat." But this statement does not establish where Ms. Holloway's children were at the time of the battery. Rather, Officer Jackson said Ms. Holloway did not state exactly where her children were at this time, and she indicated that they may have already been

inside of the McDonald's.

Moreover, even if this incident had occurred in the presence of Ms. Holloway's children, there is no evidence that a firearm was used in connection with the battery. While Mr. Lusk did have a pistol, he has a long history of possessing firearms and contends that he possessed this gun for personal protection. That he did not draw it or threaten to use it in relation to Ms. Holloway, evident from her statement to police at the McDonald's, suggests that his possession of it was separate from the confrontation with her. As such, the Government has not presented evidence sufficient to demonstrate that Mr. Lusk used a firearm in connection with a battery, knowing that children under age sixteen were present and able to see or hear the offense. Indeed, at the hearing in this matter, the Government admitted that its position with regard to this theory is "a little bit tenuous." It has thus not carried its burden of establishing that the § 2K1.1(b)(6)(B) enhancement is justified based on felony battery.

That leaves the Government's drug distribution argument. The Government contends that the evidence indicates that Mr. Lusk was selling drugs. It notes that Mr. Lusk had a firearm, a tool of the drug trade. Further, Mr. Lusk possessed what Agent DuPont considered to be a distribution quantity of heroin, two other types of drugs and a digital scale. Mr. Lusk also had $231 in cash. Finally, police did not recover any needles from Mr. Lusk, which Agent DuPont suggested indicates that Mr. Lusk was distributing, rather than using, heroin.

But here too the Court finds the enhancement inapplicable. While Agent DuPont testified that it would be unusual for an addict to carry a firearm, that testimony is of little relevance given the consensus of both parties that Mr. Lusk has an extremely serious drug problem as further corroborated by the uncontested paragraph 81 of the presentence report. Further, while Agent DuPont testified that the quantity of heroin Mr. Lusk had on his person was likely a distribution

weight, he also conceded that a heavy heroin user could use up to a gram per day. Additionally, paragraph 10 of the presentence report, which the parties have not disputed, indicates that Mr. Lusk both snorted and injected heroin. Agent DuPont indicated that he did not know what quantity one that snorted, rather than injected, heroin would consume per day. Mr. Lusk's intranasal use of heroin may also explain the lack of needles in the car. And while Mr. Lusk had a digital scale, Agent DuPont said that, while it is not the usual case, some individuals that use but do not distribute drugs carry scales. The Court also notes that Agent DuPont's investigative experience appears to be based primarily on drug distributors, and thus may not reflect a robust sample size of simple users and what such users ordinarily carry. That leaves the other drugs and the cash in Mr. Lusk's possession. But Agent DuPont testified that the amount of cocaine in Mr. Lusk's possession could be consistent with personal use, and the parties did not address the marijuana. As for the cash, it was not a particularly large amount, and is easily explained by the job Mr. Lusk had about a week prior to his arrest. Finally, the Court notes that there is no other evidence connecting Mr. Lusk to drug distribution. For example, the Government has not provided any informant testimony, evidence of controlled buys or any indication that Mr. Lusk was under investigation for drug distribution. In fact, Agent DuPont confirmed that, as far as he knew, Mr. Lusk was not under any investigation for drug activity. As such, the Court is unable to conclude by a preponderance of the evidence that Mr. Lusk was distributing drugs such that § 2K2.1(b)(6)(B) should apply. While the possession of heroin or cocaine could also be a predicate offense for this enhancement, there is simply no evidence that the defendant's possession of a firearm facilitated or had the potential to facilitate his mere possession of those substances.

**V.  Conclusion**

The Court thus concludes that the § 2K2.1(b)(6)(B) enhancement does not apply.

Accordingly, due to the lack of other enhancements in this case, and the parties' prior agreement

that Mr. Lusk's base offense level is 14 under § 2K2.1(a)(6), the Court finds that Mr. Lusk's

adjusted offense level is 14.

SO ORDERED.

ENTERED:  May 16, 2016

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court